(May 26, 1909.)

DUDLEY P. ARMSTRONG, Respondent, v. MELVIN HENDERSON and ELIZABETH HENDERSON, Appellants.

[102 Pac. 361.]

APPEAL—TITLE OF CAUSE—TIME OF FILING TRANSCRIPT—CERTIFICATION —JUDGMENT-ROLL—LANDS WITHIN INDIAN RESERVATION—ENTRY— CONTRACT TO CONVEY—STATUTE OF FRAUDS.

1. The title of the cause as shown in the transcript is sufficient where it is the same as the title in the complaint.

2. Under rule 23 of the rules of this court, transcripts of the record must be served upon the adverse party and filed in this court within sixty days after the appeal is perfected.

3. Under rule 25 of the rules of this court, the time during which the trial court or judge thereof holds a bill of exceptions or statement prior to the settlement and filing thereof, and the time during which the attorney for the respondent may retain the transcript on appeal before certifying or refusing to certify the same, shall be excluded in computing the time, under rule 23, in which the transcript on appeal shall be filed.

4. Where the record shows that judgment was entered on June 26, 1908, and the notice of appeal was served and filed on August

20th, and the transcript was served on respondent on December 17th, and filed in this court on December 19, 1908, the transcript is filed in time, where it also appears that the appellants' counsel consumed only twenty-three days (exclusive of the time the bill of exceptions was held by the trial judge) between the day the appeal was taken and the date the transcript was filed in this court.

5. Where pleadings are amended, they take the place of the original, and all subsequent proceedings in the case are based upon the amended pleadings; and where the judgment-roll shows the amended pleadings, the court will presume that the pleadings contained in the transcript, certified by the clerk to be correct, are those which constitute the judgment-roll.

6. A paper purporting to be a contract, as follows: "Robin, June 16, 1902. We, the undersigned citizens of Robin, Bannock county, Idaho, voluntarily agree to deed and redeed to the old lines as they stand at present," is incomplete, indefinite and uncertain and cannot be enforced in an action for specific performance.

7. Parol evidence was not admissible for the purpose of supplying the description of the lands referred to, and to make the same comply and come within the statute of frauds.

8. A contract entered into by trespassers upon and occupants of lands within an Indian reservation before the same is thrown open for entry, that such persons will make homestead entry when the land is open for entry, and after acquiring title will make conveyances so as to adjust their title to the lands occupied before entry, is against public policy and void.

9. Under the homestead act, title to land entered cannot inure to the benefit of any person other than the entryman, nor can trust relations legally exist between the entryman and any other person in respect to the land entered.

(Syllabus by the court.)

APPEAL from the District Court of the Fifth Judicial District, for Bannock County. Hon. J. M. Stevens, Judge.

An action to quiet title. Judgment for plaintiff. Defendants appeal. *Affirmed.*

Clark & Budge, for Appellants.

This agreement was entered into prior to patent,—in fact prior to entry,—and it contemplated mutual advantage to the various possessory claimants by stipulating that conveyances should be executed after patent. Under the con-

ditions in this case, such an agreement is not forbidden by or against the policy of the law. (*Lamb v. Davenport,* 85 U. S. 307, 21 L. ed. 759; *McKennon v. Winn,* 1 Okl. 327, 33 Pac. 582, 22 L. R. A. 501; *Sweeney v. Sparling,* 81 Ia. 433, 25 Am. St. 506, 46 N. W. 1068, 9 L. R. A. 777; *Townsend v. Fenton,* 30 Minn. 528, 16 N. W. 421; *Gaines v. Molen,* 30 Fed. 27.)

There is a provision of the statute which entitles us to prove and rely upon the agreement in this case in so far as it tended to explain the conditions surrounding the parties at the time respondent made his promise to convey. (Sec. 2274, U. S. Rev. Stat.)

This court has held that settlers upon an Indian reservation are subject to the same laws governing the possession and right to possession of property as settlers upon the public domain. The statute above quoted has been construed and approved. (*Miles v. Johnson,* 18 Utah, 428; 56 Pac. 299.) Taking possession and making improvements take a contract out of the statute of frauds. (Sec. 6008, Rev. Stat.; *Fleming v. Baker,* 12 Ida. 346, 85 Pac. 1092; *Francis v. Green,* 7 Ida. 668, 65 Pac. 362; *Barton v. Dunlap,* 8 Ida. 82, 66 Pac. 832.)

Although a party already has possession at the time of the contract, if he makes improvements after the contract is made, it is sufficient to take the contract out of the statute. (*Pugh v. Spicknall,* 43 Or. 489, 73 Pac. 1020, 74 Pac. 485; *Borrow v. Borrow,* 34 Wash. 684, 76 Pac. 305; *Crane v. Cheney,* 77 Kan. 815, 91 Pac. 67; *Brown v. Hoag,* 35 Minn. 373, 29 N. W. 135.) That part performance is sufficient, see *Deeds v. Stevens,* 8 Ida. 514, 69 Pac. 534; *Darke v. Smith,* 14 Utah, 35, 45 Pac. 1006; *Barrett v. Schleich,* 37 Or. 613, 62 Pac. 792.)

Standrod & Terrell, for Respondent.

In order for the affirmative matter in the answer to constitute a defense, or the cross-complaint to state a cause of action, the appellant should plead and prove a contract which is fair, definite, certain, and complete in its terms,

reasonable in its application, mutual in its engagements, and based upon an adequate consideration. (*Bear Track Min. Co. v. Clark,* 6 Ida. 196, 54 Pac. 1007; *Agard v. Valencia,* 39 Cal. 292; *Mayger v. Cruse,* 5 Mont. 485, 6 Pac. 333; *Evans v. Lee,* 12 Nev. 399; *Walcott v. Watson,* 53 Fed. 435; *Diamond State Iron Co. v. Todd,* 8 Houst. 372, 6 Del. Ch. 163, 14 Atl. 27; *Morrison v. Rossignol,* 5 Cal. 65; *Appeal of Holthouse* (Pa.), 12 Atl. 340; *Hollenbeck v. Prior,* 5 Dak. 298, 40 N. W. 347; *Fogg v. Price,* 145 Mass. 513, 14 N. E. 741.)

"A court of equity will not decree specific performance of a contract unless the thing agreed to be done is definite and certain in its terms and in itself; and the party asking for performance must make out with clear and satisfactory proof the existence of the contract as he alleges it." (*Magee v. McManus,* 70 Cal. 553, 12 Pac. 451; *Los Angeles Co. v. Phillips,* 56 Cal. 539; *Whitehill v. Lowe,* 10 Utah, 419, 37 Pac. 589.)

A mere preponderance of the evidence is not sufficient. The evidence must be such as to prove the contract beyond a reasonable doubt. (*Rice v. Rigley,* 7 Ida. 115, 61 Pac. 290; *Deeds v. Stephens,* 10 Ida. 332, 79 Pac. 77; *Prairie Development Co. v. Leiberg,* 15 Ida. 379, 98 Pac. 616.)

"Where a party occupying lands of the United States, with a view of acquiring title thereto under the provisions of the homestead laws, before the expiration of the five years from the date of entry and the ripening of his homestead right, sells an undivided interest therein, receives full payment, and executes a contract to convey such interest by warranty deed after perfecting his title, held that a court of equity will not lend its aid to compel the specific performance of the contract." (*Mellison v. Allen,* 30 Kan. 382, 2 Pac. 97; *Brake v. Bellum,* 19 Kan. 397; *McCue v. Smith,* 9 Minn. 252, 86 Am. Dec. 100; *Turner v. Donnelly,* 70 Cal. 597, 12 Pac. 469; *Hudson v. Johnson,* 45 Cal. 21; *Damrell v. Meyer,* 40 Cal. 166.)

"A written contract by a homesteader, made before compliance with the laws of the United States relative to home-

steads in order to acquire title, is against public policy and void, and will not be enforced in a court of equity, although a valuable consideration may have passed from the purchaser to the homesteader." (*McCrillis. v. Copp,* 31 Fla. 100, 12 So. 643; *Nichols v. Council,* 51 Ark. 26, 14 Am. St. 20, 9 S. W. 305; *Weeks v. White,* 41 Kan. 569, 21 Pac. 600; *Cox v. Donnelly,* 34 Ark. 762; *Dawson v. Merrille,* 2 Neb. 119; *Oaks v. Heaton,* 44 Iowa, 116; *Anderson v. Carkins,* 135 U. S. 483, 10 Sup. Ct. 905, 34 L. ed. 272; *Horseman v. Horseman,* 43 Or. 83, 72 Pac. 698; *In re Groome Estate,* 94 Cal. 69, 29 Pac. 487; *Bass v. Smith,* 12 Okl. 485, 71 Pac. 628; *Mayger v. Cruse,* 5 Mont. 485, 6 Pac. 333; *Jackson v. Baker,* 48 Or. 155, 85 Pac. 512.)

These parties could not initiate a right to these lands in violation of sec. 2118, U. S. Rev. Stat. They were mere trespassers, without any right whatever, and in a position wherein they could not initiate a right. (*Langford v. Monteith,* 1 Ida. 612.)

STEWART, J.—The respondent, Dudley P. Armstrong, brought this action against appellants to quiet title to the following described lands:

"1. The south half of the southeast quarter of sec. 32, in township 9 south of range 36 east of the Boise meridian, in Bannock county, containing eighty acres;

"2. The northwest quarter of the southeast quarter, the east half of the southwest quarter and the southwest quarter of the southwest quarter of said sec. 32, in said township 9 south of range 36 east of Boise meridian, in Bannock county, containing 160 acres."

The defendants set up as a defense, and as cause of action by cross-complaint, the claim that prior to the opening of said lands for settlement, the lands now claimed by plaintiff and other lands adjacent and in the vicinity had been settled upon by various persons who made their homes thereon, and intended when said lands were placed upon the market to acquire title thereto under the laws of the United States relative to the disposition of public lands; that such settlers and occupants were uncertain as to the lines bounding the

legal subdivisions, and in their occupancy of said lands had agreed among themselves as to their boundary lines, and recognized such boundary lines as defining their rights and their possession; that at the time said lands were placed upon the market and opened to entry, a portion of the eighty acre tract above referred to was included within the inclosure and occupancy of Melvin Henderson and his wife, Elizabeth Henderson, and their predecessors in interest for a period of approximately twenty-five years; that Gwendolin Marley, the predecessor in interest of plaintiff, was also in the possession and occupied a tract of land which included a portion of said eighty acre tract and not included within the inclosure of said Melvin Henderson; that when said lands were thrown open to entry on June 18, 1902, Gwendolin Marley entered said eighty acre tract, and after making final proof thereon on December 29, 1904, received patent therefor from the United States; that on May 26, 1904, said Gwendolin Marley executed and delivered to the plaintiff a warranty deed for said eighty acre tract; that one Seth C. Glover was in the possession and had inclosed a tract of land embracing practically the 160 acre tract above described; that the agreement with reference to adjusting such lines was made between the appellants, Gwendolin Marley, Seth C. Glover and others.

It is further alleged that an agreement was also made between the plaintiff and Seth C. Glover, by which the plaintiff agreed to include within an entry to be made by him the lands embraced in Seth C. Glover's inclosure and covered by the 160 acre tract heretofore described, and, after procuring title thereto, would convey to said Glover that portion of said tract which was included within the inclosure of said Glover prior to the time the plaintiff entered the same; that the entries were made and permitted to be made by said parties in accordance with said agreements; that subsequent to the entry of said 160 acre tract by Dudley P. Armstrong, the defendant and cross-complainant, Melvin Henderson, purchased from Seth C. Glover his improvements and his right in and to the lands included within his inclosure and covered by the entry of the plaintiff Armstrong;

that after said entries were made, the parties continued to occupy the lands and recognized the lines as they existed prior to the time the same were entered, and the possessions were respected by each party to such agreement.

The cross-complainants prayed that said contracts be enforced and that the parties be required to make conveyances accordingly. The question was tried to the court and the court made findings of fact and entered judgment in favor of the plaintiff as prayed for in his complaint. This appeal is from the judgment.

The respondent moves to dismiss the appeal and to strike the transcript from the files, first, because the action is not properly entitled; second, because the transcript was not served and filed until more than sixty days from the time the appeal was taken; third, because the transcript on appeal does not contain the judgment-roll.

The title of the action as contained in the complaint is: "Dudley P. Armstrong, Plaintiff, v. Melvin Henderson, Alfred Henderson and Leon Henderson, Defendants." The title of the cause as appears upon the transcript is the same. We therefore find no defect in the title of the cause.

The second ground of the motion is based upon rule 23 of the rules of this court. This rule provides:

"In all cases where an appeal is perfected, . . . . transcripts of the record must be served upon the adverse party and filed in this court within sixty days after the appeal is perfected."

The judgment in this case was entered on June 26, 1908; the notice of appeal was served and filed August 20, 1908. The transcript was served on respondent on December 17th and filed in this court on December 19, 1908. In opposition to the motion to dismiss the appeal upon this ground, counsel for appellants file an affidavit, which is not contradicted, to the effect that on August 26, 1908, the appellants' proposed bill of exceptions was served upon the attorney for respondent; that on October 28th respondent served upon appellants his proposed amendments to said bill of exceptions; that on September 2d appellants' proposed bill of exceptions and the amendments thereto were delivered to

the clerk of the district court for the judge who tried and heard said cause, and upon the same day counsel for appellants addressed a letter to the judge, notifying him that the bill of exceptions had been delivered to the clerk, and requesting that the bill be settled at the earliest possible date. That on September 19th counsel for appellants communicated with the judge over the phone, requesting that a time and place be fixed for the settlement of said exceptions, and was informed by the trial judge that he would endeavor to arrange within a few days time to settle the bill, but that no time was fixed, and on October 19th counsel again addressed a letter to the judge requesting that a time be fixed for settling said bill and no time was fixed, and during the week commencing October 26th, counsel again communicated with the judge over the phone requesting that said bill of exceptions be settled. It further appears that counsel relied upon the statements of the judge, and acted thereon, that a time would be fixed and the bill settled, and on September 4th an agreement was reached between the attorneys for the respective parties as to the amendments proposed to the bill of exceptions, and a stipulation was entered into for the settlement of the bill; and on December 7th, said bill was settled and allowed by the trial judge and filed with the clerk of the district court on December 10th, and served on the 17th and filed in this court on the 19th.

It thus appears from this showing that the bill of exceptions, with the amendments proposed, was delivered to the clerk for the judge on September 2, 1908, and the judge informed of such fact. The trial judge thus held the bill of exceptions without settling the same until December 4, 1908. Rule 25 of this court provides:

"The time limited in which a transcript must be served and filed, as set forth in rule 23, may be extended by an order of the court, or a justice thereof, upon good cause shown by affidavit, or by stipulation of the parties filed with the clerk, but only one such order shall be made by the court or a justice thereof in any case, **nor shall such extension in** any case exceed thirty days."

It appears in this case that no order extending the time within which the transcript might be filed was made by an order of this court or a justice thereof. Rule 25, however, further provides: "That the time during which the trial court, or judge thereof, may hold a bill of exceptions, or statement, prior to the settlement and filing thereof; and the time during which the attorney for the respondent may retain the transcript on appeal before certifying, or refusing to certify the same, shall be excluded in computing the time, either under this rule, or under rule 23, within which the transcript on appeal shall be filed." Thus it appears that counsel for appellants consumed only twenty-three days, exclusive of the time the bill of exceptions was held by the trial judge between the day the appeal was taken and the date the transcript was filed in this court. Under rule 23 he was allowed sixty days. This ground of the motion is not well taken. (*Miller v. Pine Min. Co.,* 3 Ida. 426, 31 Pac. 802.)

Counsel for respondent next contends that the appeal should be dismissed because the transcript on appeal does not contain the judgment-roll. This contention is based upon the claim that there was an original answer and cross-complaint filed in said cause which is not made a part of the record. The transcript contains what is marked as an amended answer and cross-complaint, and from this counsel for respondent argue that there was an original amended answer and cross-complaint which should be made a part of the record, and because of such fact the transcript does not contain the judgment-roll.

Where amended pleadings are filed, they take the place of the original; and all subsequent proceedings in the case are based upon the amended pleadings. So in this case, where an amended answer and cross-complaint was filed, it took the place of the original answer and cross-complaint; and all subsequent proceedings in said cause were based upon the same. (*People v. Hunt,* 1 Ida. 433; *Andrews v. Moore,* 14 Ida. 465, 94 Pac. 579; *Wooddy v. Jamieson,* 4 Ida. 448, 40 Pac. 61.)

In the case of *O'Shea v. Wilkinson*, 95 Cal. 454, 30 Pac. 588, the supreme court of that state said:

"In the absence of a showing to the contrary, we must presume that the pleadings, order, findings, and judgment mentioned in the certificate are those which constitute the judgment-roll."

In this case counsel stipulated that the papers contained in the transcript were correct and from which this court will presume, in the absence of a showing to the contrary, that they constitute the judgment-roll. The motion to dismiss the appeal is overruled.

Counsel for appellants assign twenty errors. We shall not, however, discuss each of these assignments separately, for the reason that they may all be disposed of in considering the nature and character of the defense plead and attempted to be proven.

It appears that the lands in controversy were within the boundaries of the Fort Hall Indian Reservation prior to June 18, 1902, and that on that date the lands of the reservation were opened to public entry. The appellants base their right to recover in this action upon the claim that an agreement was entered into prior to the time such lands were open to entry, by which it was agreed that such occupants should acquire title under the homestead laws, and after acquiring such title should make conveyances in accordance with the inclosure and lines and fences of the respective occupants; and to support this contention the appellants offered in evidence the following paper which was excluded by the court:

"Robin, June 16, 1902.

"We, the undersigned citizens of Robin, Bannock county, Idaho, voluntarily agree to deed and redeed to the old lines as they stand at present.

"B. W. HENDERSON,
"MELVIN HENDERSON,
"MARY DAVIS,
"JAMES H. ELLIS,
"DUDLEY P. ARMSTRONG,
"JAMES T. HENDERSON,
"HENRY HENDERSON."

—and the exclusion of this paper is assigned as error. This paper cannot be recognized as a contract to convey real property because it is incomplete, indefinite and uncertain.

This question is fully considered, and the facts bring this case within the rule announced by this court, in the case of *Allen v. Kitchen,* 16 Ida. 133, 100 Pac. 1052. Under the rule announced in that case, parol evidence was held inadmissible for the purpose of supplying or adding the description or location of the land in order to make such contract comply with the requirements of the statute of frauds. The contract is also against public policy and void; it was directly in violation of the statute of the United States. Under the homestead act (6 Fed. Stat. Ann., secs. 2290, 2291, U. S. Comp. St. 1901, pp. 1389, 1390), the title to the land entered as a homestead cannot inure to the benefit of any person other than the entryman, nor can express trust relations legally exist between the entryman and any other person in respect to the land entered. (*Shorman v. Eakin,* 47 Ark. 351; *Clark v. Bayley,* 5 Or. 343.) If such contract was made, it was made between parties who were trespassers on an Indian reservation and at a time when such lands were not subject to entry. By the terms of such contract such persons attempted to fix and determine the title each would take to land from the United States entered under the homestead laws. This, in effect, would constitute each a trustee for the other of that portion of the lands which the contract required should be conveyed after title was acquired. To uphold and enforce such a contract would be giving countenance to and recognizing rights initiated in violation of the laws of the United States. The authorities are so numerous on this question and so uniform in adhering to the doctrine that such contracts are void as against public policy, that it seems almost useless to cite such authorities. To uphold and permit a contract of this kind to be made and to be enforced in the courts would be giving countenance to rights initiated by reason of a trespass upon an Indian reservation.

It is not claimed that the appellants were Indians or had permission or right to enter upon said reservation. They

in no way connect themselves with the right to occupy any of said lands prior to the time the same were opened to entry. The supreme court of the territory of Idaho had under consideration a kindred question in the case of *Langford v. Monteith*, 1 Ida. 612, in which the court said:

"We are compelled to come to the conclusion above stated, that plaintiff in this action was a trespasser upon the Nez Perce reservation, without any right whatever to enter into contracts for the use and occupation of Indian land reserved under treaty, and that if he did make such agreements, the same could not be enforced in the courts of this territory, for the reason that the Indians had the sole right to use and occupy such land, or premises, and the courts were bound to protect them in the same."

So, in the case under consideration, the appellants not being Indians and not showing any right to occupy territory within the boundaries of the Indian reservation, they could acquire no right by reason of their occupancy of such lands. They had no right to make a contract with reference to the effect such occupancy would have when the same were entered as homesteads under the laws of the United States. Their rights are gauged and governed entirely by the rights acquired under and by virtue of their entry of such lands under the provisions of the land laws of the United States. (*Mellison v. Allen*, 30 Kan. 382, 2 Pac. 97; *Brake v. Ballou*, 19 Kan. 397; *Turner v. Donnelly*, 70 Cal. 597, 12 Pac. 469; *Hudson v. Johnson*, 45 Cal. 21; *Damrell v. Meyer*, 40 Cal. 166.)

The supreme court of the United States in the case of *Anderson v. Carkins*, 135 U. S. 483, 10 Sup. Ct. 905, 34 L. ed. 272, holds:

"A contract by one contemplating land as a homestead and who subsequently obtains title to it as such for the sale or conveyance of half the land to another in consideration of the improvements made or owned by the latter is void, and specific performance of it will not be decreed."

But it is contended by appellants that respondent recognized such contracts after he had received title to the

Gwendolin Marley tract and after he had made homestead entry on the other tract. This is disputed by the respondent, and the court finds against this contention, and we are clearly satisfied that the findings of the court are supported by the evidence; but even if this were true, still it would not place the appellants in a position where they could have enforced such contracts, because by so doing the parties themselves would thus be enabled to give force and effect to contracts made in violation of the laws of the United States, and thereby do indirectly what they could not do directly.

The record in this case fails to show such a state of facts as would constitute a defense to the plaintiff's claim, or a state of facts which would entitle the appellants to a specific performance of the contracts relied upon. We deem a further discussion of the questions involved in this case unnecessary. The judgment is affirmed. Costs awarded to respondent.

Sullivan, C. J., and Ailshie, J., concur.